UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE | : | 3:05cv98 |
| | : | |
| v. | : | |
| | : | |
| DOLLAR TREE STORES, INC. | : | |

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This is a breach of contract action relative to a Large Risk Alternative Rating and Insurance Program Agreement.  The parties have filed cross motions for summary judgment, each requesting a declaratory judgment as to whether the relevant contract provided for an adjustable basket aggregate based on Dollar Tree's actual audited workers' compensation payroll.

For the following reasons, plaintiff's motion for summary judgment will be granted.  Defendant's motion for summary judgment will be denied.

### Background

The parties have filed memoranda, statements of fact and affidavits, which reveal that the following relevant facts are not in dispute.  In setting forth the undisputed facts, the Court relies upon the Local Rule 56(a) statements of facts, including Hartford's amended Local Rule 56(a)(2) statement.

In 2000, Dollar Tree solicited bids for its insurance program, including workers' compensation, commercial general liability, and business auto liability coverages.  Several insurance companies made proposals for Dollar Tree's Insurance program.

Dollar Tree used Aon, an insurance brokerage firm, to

negotiate the insurance and risk financing agreements that it obtained from Hartford.

On June 2, 2000, Dollar Tree bound coverage with Hartford. Dollar Tree had a "kick-off" meeting with Hartford on June 7, 2000.

On July 25, 2000, John Witt of Aon sent a letter to Nancy Powell[1], Risk Manager of Dollar Tree, which letter stated:

> Attached you will find the final recap of the Hartford program. Hartford has sent me a confirmation of "Sold Program" which I reviewed and made several changes to bring it in line with what was finally agreed upon. They are making revisions to their document and I will send you a copy of that to review as soon as it is received.

The document attached to this letter contained a section entitled "Maximum Loss Provision (Basket Aggregate)," which provided:

> The maximum loss provision is exhausted by loss payments as defined for the insurance following the rating plans without exception. The maximum loss within the deductible in any one-year is $10,000,000. This includes indemnity (loss), medical payments, and expenses. General Liability, and Workers Compensation erode maximum loss.

Hartford represents that this language does not constitute part of its Confirmation of Sold Program.

The Large Risk Alternative Rating and Insurance Program Agreement (the "2000-2001 Agreement") was signed by Hartford on October 5, 2000, and by Dollar Tree on December 15, 2000.

Pursuant to the 2000-2001 Agreement, Hartford issued workers' compensation, commercial general liability, and business auto liability insurance policies to Dollar Tree. The 2000-2001

---

[1]Nancy Powell is now known as Nancy Norman.

Agreement provided that Dollar Tree was responsible for the first $250,000 of each workers' compensation claim, $40,000 for each general liability claim, and $25,000 for each business auto liability claim.

Section 9 of the 2000-2001 Agreement set forth the following terms of the "Basket Maximum Provision for Loss":

> The initial Basket Maximum Provision for Loss is $10,000,000.
>
> Basket Maximum Provision for Loss Amount is subject to a rate of 4.87 per $100 of Workers' Compensation Payroll of $205,388,954 *including* monopolistic payroll and shall be less than $10,000,000.  The Basket Maximum Provision For Loss Shall be the greater of the two amounts.

The 2000-2001 Agreement provided:

> The "Basket Maximum Provision for Loss" establishes the aggregate amount the Customer will pay for losses under the rating programs shown on the **Cover Pages** and does not include any premiums.  The Basket Maximum is obtained by multiplying the applicable rate times the combined coverage maximum rating base.  All losses within deductible portions of **Policies**, retained as an SIR under excess **Policy**, or included within the loss limitation of a retrospectively rated **Policy** will be included in the Basket Maximum. Customer will not be billed for additional loss reimbursements or insurance premiums after the Basket Maximum, only as long as limits of liability are available under the terms of the Excess **Policies.**
>
> If **Policies** to which this provision applies are canceled or otherwise terminated prior to the end of their **Policy** term, the minimum amount for the Basket Maximum will not be changed.

Once Dollar Tree's cumulative payments for claims met the Basket Maximum, Dollar Tree would no longer be responsible for making payments for claims.[2]

The 2000-2001 Agreement also contained a merger clause as follows:

> This Agreement supersedes and cancels all prior agreements between the parties relating to the subject matter hereof and shall not be amended or revised except by a written supplement signed by all the parties.

At the end of the 2000-2001 Agreement period, Dollar Tree renewed its policies and rating agreements with Hartford ("Renewed Contract"). The Renewed Contract provided for the same terms as the 2000-2001 Agreement except that the "initial Basket Maximum" was stated as $25,000,000.

In October 2003, Dollar Tree was approaching $10 million in aggregate payments under the 2000-2001 Agreement. Nancy Norman contacted Hartford and asked about the Basket Maximum. Hartford advised her that the Basket Maximum had been adjusted to $12,211,252 after an audit of Dollar Tree's actual workers' compensation payroll. The audit, which had begun in Fall 2001 and was finalized in May 2002, determined that the payroll was approximately 20% higher than Dollar Tree's estimation of its workers' compensation payroll for that period.

---

[2]The parties dispute whether the Basket Maximum was an adjustable amount.

4

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

This standard applies equally to counterclaims.

Hartford Fire Insurance argues that the contract unambiguously provides for an adjustable basket aggregate. Dollar Tree counters that the contract unambiguously provides for

a hard cap of $10,000,000 on the basket aggregate.

According to Dollar Tree, the contract's use of the word "maximum" and its failure to define or modify the "Basket Maximum" provision with the word "adjustable" militates in favor of its interpretation.  Dollar Tree asserts that the term "initial" implies only that the agreement was subject to possible renewal at a later date.  Dollar Tree argues further that reading the word "adjustable" into the basket aggregate provision is at odds with the contract's use of the word "maximum."

Hartford contends that Dollar Tree overlooks the plain language of contract and ignores provisions that clearly contemplate an adjustable basket aggregate.  Hartford advances four points in favor of its interpretation of an adjustable basket aggregate:  1) the word "initial" modifies the term providing for a $10,000,000 Basket Maximum, thereby necessitating the implication that the contract contemplated a change in the amount of the basket aggregate; 2) an adjustable basket aggregate is consistent with the contract's inclusion of a formula to be used in adjustment of the amount; 3) the contract provides that the basket aggregate is be the greater of the amount calculated by the formula or $10,000,000; and 4) the contract's definition of the "Basket Maximum Provision for Loss" states that the Basket Maximum is "obtained by multiplying the applicable rate times the combined coverage maximum rating base."

A contract must be viewed in its entirety, and every provision must be given effect if it is possible to do so.

United Illuminating Co. v. Wisvest-Connecticut, LLC, 259 Conn. 665, 670-71 (2002).  In interpreting contract terms, the Court must afford the language used "its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Wolosoff v. Wolosoff, 91 Conn.App. 374, 381 (Conn.App. 2005).  Where the language of the contract is clear and unambiguous, the contract should be given effect according to its terms. Breiter v. Breiter, 80 Conn.App. 332, 336 (2003).  A contract is unambiguous when its language is clear and conveys a definite and precise intent. Canterbury Heights Condominium, Inc. v. Local Land Dev. LLC, 272 Conn. 724, 735 (2005).  "A contract term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument. . . ." Heyman v. CVS, Inc., 178 Conn. 215, 227 (1979).  "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." Barnard v. Barnard, 214 Conn. 99, 110 (1990).

A contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. Levine, 232 Conn. at 278-279.  The ambiguity "must emanate from the language used" by the parties. United Illuminating Co, 259 Conn. at 671.  If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous. Lopinto v. Haines, 185 Conn. 527, 538 (1981).   The

question of whether a contractual provision is ambiguous presents a question of law.  LMK Enterprises, Inc. v. Sun Oil Co., 86 Conn.App. 302, 306 (2004).  Where a contract term is found to be ambiguous, the court may properly discern the intent of the contract through consideration of extrinsic evidence.  See United Illuminating Co, 259 Conn. at 675.

The Court finds that an adjustable basket aggregate is clearly and unambiguously afforded by the contract terms.[3]  Both parties appear to agree that the word "initial" implies that the $10,000,000 would change at some point in the future.[4]  However, provisions within the four corners of the contract elucidate that the $10,000,000 was subject to recalculation during the term of the contract, rather than upon renegotiation of a renewed contract.  Section 9 of the 2000-2001 Agreement states that the Basket Maximum "is subject to a rate of 4.97 per $100 of Workers' Compensation Payroll of $205,388,954.  .  . and shall be no less than $10,000,000."  The following sentence qualifies that the Basket Maximum "shall be the greater of two amounts."  In defining the Basket Maximum, the 2000-2001 Agreement provides:

> The "Basket Maximum Provision for Loss" establishes the aggregate amount that the customer will pay for losses under the rating programs shown on the Cover Pages and does not include any premiums.  The Basket Maximum is obtained by multiplying the applicable rate times the combined coverage maximum rating base.

---

[3]Since the Court finds that the contract is unambiguous, the Court will not consider extrinsic evidence.

[4]"Initial" is defined as "of or relating to the beginning...." Webster's 3rd New Int'l Dictionary (1993).

These provisions unambiguously set forth a basket aggregate that is the greater of two amounts:  1) $10,000,000 or 2) the amount calculated pursuant to the formula.  If the Court interpreted the contract as providing for a hard cap of $10,000,000, these terms would be rendered superfluous in contravention of the canons of construction.  See 24 Leggett St. Ltd. P'ship, 239 Conn. 284, 298 (1996)(since parties do not insert meaningless provisions in their agreements, every provision of a contract must be given effect if it can reasonably be done).

"Maximum" is defined as "the greatest quantity or value attainable or attained. . . ."  Webster's Ninth New Collegiate Dictionary (1987).  Within the context of the contract's four corners, "maximum" denotes the most that Dollar Tree was obliged to pay toward claims before it would no longer be responsible for making such payments, which amount was subject to adjustment.  In section 9 of the contract, the $10,000,000 "Basket Maximum Provision for Loss" is qualified by the word "initial."  Thus, it would defy the grammatical logic of the sentence to find that the word "maximum" necessarily signifies that the basket aggregate was capped at $10,000,000.

Further, an adjustable basket aggregate is consistent with the contract's provision that "the minimum amount for the Basket Maximum will not be changed" in the event of policy cancellation or termination.  Accordingly, the contract provides for an adjustable basket aggregate with a floor of $10,000,000.

Dollar Tree asserts there was no meeting of the minds as to a contractual provision for an adjustable basket aggregate, which thereby prevents enforcement of the contract.  A court must enforce a contract between private parties "unless the contract is voidable on grounds such as mistake, fraud or unconscionablity."  Wallenta v. Moscowitz, 81 Conn.App. 213, 223 (2004).  Dollar Tree's misunderstanding of the terms of the contract amounts to a unilateral mistake, which is insufficient to void the contract without some showing that enforcement of the contract would be unconscionable.  Gebbie v. Cadle Co., 49 Conn.App. 265, 276 (1998); see also City of Hartford v. Chase, 942 F.2d 130, 135 (2d Cir. 1991) (recission based on one party's mistaken understanding of terms of agreement is available only where mistake has been caused by the other party's fraud).

In this instance, the terms of the contract clearly provided that the $10,000,000 basket maximum represented an initial amount and was subject to recalculation pursuant to the formula set forth therein.  No evidence suggests that Hartford knew or had reason to know of Dollar Tree's assumption that the contract provided a hard cap, or that Hartford took advantage of Dollar Tree's misunderstanding of the contract terms.  Thus, there is no inference of fact that enforcement of the contract would be unconscionable.

Accordingly, the Court will grant Hartford's motion for summary judgment.  Dollar Tree's motion for summary judgment will

be denied.  The Court will issue the declaratory judgment but submission of briefs on the request for damages will be required.

## CONCLUSION

For the foregoing reasons, Dollar Tree's motion for summary judgment [#24] is DENIED; and Hartford's motion for summary judgment [#30] is GRANTED.

The Court hereby issues the following declaratory judgment:

In accordance with the plain language of the 2000-2001 Agreement, the Court finds that the Basket Maximum is adjustable. The Court finds the Basket Maximum of the Renewed Contract is also adjustable since its relevant terms are identical to that of the 2000-2001 Agreement.

Hartford is instructed to submit a brief with evidentiary support as to its damages request within 30 days of this ruling's filing date.  Dollar Tree may file a response to that brief within 21 days of its filing date.  Hartford will have 10 days to file its Reply, if necessary.

So Ordered.



Warren W. Eginton, Senior U.S. District Judge

Dated this 4th day of January, 2006 at Bridgeport, Connecticut.

11