UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **HARTFORD FIRE INSURANCE** | : | 3:05cv98 (WWE) |
| | : | |
| v. | : | |
| | : | |
| **DOLLAR TREE STORES, INC.** | : | |

### RULING ON MOTION FOR DAMAGES, ATTORNEYS' FEES, COSTS AND PREJUDGMENT INTEREST

This breach of contract action concerns interpretation of a basket aggregate provision of a Large Risk Alternative Rating and Insurance Program Agreement. Plaintiff Hartford Fire Insurance ("Hartford") and defendant Dollar Tree Stores, Inc. ("Dollar Tree") filed cross motions for summary judgment, each requesting a declaratory judgment as to whether the relevant contract provided for an adjustable basket aggregate based on Dollar Tree's actual audited workers' compensation payroll. On January 4, 2006, this Court ruled that the relevant basket aggregate provision is adjustable.

Plaintiff now requests reimbursement, late charges, attorneys' fees, costs and prejudgment interest. For the following reasons, Hartford's motion is granted in part and denied in part.

### Background

The Court incorporates herein the factual background recited in this Court's January 4, 2006 Ruling on Cross Motions for Summary Judgment. The Court provides the following facts that are relevant to this motion for reimbursement, fees, costs, attorneys' fees and prejudgment interest.

From May 2004 to the present, Dollar Tree has failed to reimburse Hartford fully

for losses totaling $1,826,193.78 paid on Dollar Tree's behalf under the 2000-2001 Agreement that exceeded the initial $10,000,000 basket aggregate.

The 2000-2001 Agreement contains two provisions providing for an award of attorneys' fees. Section F(4) provides:

> In the event of default, premium and deductible loss payments under. . . this **Agreement** . . . will include Hartford's estimate of ultimate premium and losses developed to their ultimate value; and all costs and expenses, including attorney fees for the enforcement of any **Obligations** hereunder, including without limitation the fees and expenses of collection of amounts due.

Section I of the General Conditions states that "[i]n any litigation or arbitration between the parties, the prevailing party shall be entitled to reasonable attorneys' fees and all costs of proceedings incurred in enforcing this **Agreement**."

Section H of the contract provides:

> Within one hundred and eighty (180) calendar days after payment is due hereunder, Customer shall notify Hartford that it disputes any amount payable under this **Agreement** and/or the settlement, adjustment, defense or payment of any claim represented by such billed amount ("Dispute Notice"). If Customer fails to so notify Hartford, then it shall have waived all rights to dispute such payment and the settlement, defense, adjustment and payment of any claim.

The contract provides further that "if the parties are unable to negotiate a resolution at said meeting, the negotiation period shall end, and the parties shall submit the dispute to mediation in accordance with the commercial Mediation Rules of the American Arbitration Association and to bear the costs of the mediation equally. . . ."

Section F(2) of the 2000-2001 Agreement provides:

> All amounts are due and payable as set forth in the **Billing Statement**. If balances in full are not received by Hartford within thirty (30) days of the billing date on a thirty day billing cycle or within 72 hours of the issuance

>of Hartford's bill on wire transfer billing **Agreement**, Customer will pay Hartford a late charge of one and one-half percent (1.5%) of the outstanding bill for each subsequent thirty (30) day period or any part thereof until all balances due are received by Hartford.

Section F(4) provides:

>Customer's failure to satisfy its **Obligations** as defined in this **Agreement** shall constitute a cross default, entitling Hartford to declare all **Obligations** immediately due and payable. . . .

Kevin Ringuette, manager of billing operations at Hartford, avers that Hartford holds "late charges" in abeyance on invoices that are disputed by a customer, and Hartford turns off the "late charge" indicator so that it does not exacerbate an otherwise contentious billing dispute.  After an invoice has been disputed by a customer, Hartford investigates whether that dispute is a valid one.  If Hartford determines that the dispute is valid, it may waive any late charges.  If Hartford determines that the dispute is not valid, Hartford will "turn on" the indicator once the matter is resolved.

Hartford sent Dollar Tree one "Statement of Past Due Invoices", which assessed late charges to Dollar Tree for its failure to reimburse Hartford for payments made under the 2000-2001 Agreement.  This invoice included late charges despite the on-going billing dispute because Hartford had neglected to turn off the late charge indicator.

After Dollar Tree received this invoice, Marti Dickman, a Risk Manager for Dollar Tree, contacted Suzan Gotch at Hartford to explain "that the interpretation of the basket aggregate provision of the Agreement was in dispute."  Gotch removed the late charge because the dispute had not been resolved.  Gotch did not inform Dollar Tree that the late charges had been waived.

**DISCUSSION**

**Reimbursement For Losses Paid On Behalf of Dollar Tree**

Consistent with this Court's ruling in favor of Hartford's interpretation of the contract, Hartford is entitled to reimbursement for losses that are past due, totaling $1,826,193.78 pursuant to the 2000-2001 agreement. In addition, Hartford is entitled to reimbursement of losses paid on behalf of Dollar Tree that will be incurred in the future. Accordingly, the Court will issue an order that Dollar Tree timely reimburse Hartford for future losses on a monthly basis until the aggregate is exhausted.

**Late Fees**

Hartford requests late charges in the amount of 1.5% of the outstanding bill for each 30-day period from May 2004 to the present or in excess of $307,384.97. Dollar Tree contends that Hartford is not entitled to late charges because: 1) Hartford failed to bill Dollar Tree for late charges as required by the Agreement; 2) the charges at issue were disputed rather than late; and 3) the charges constitute a penalty without a reasonable relation to any actual damages suffered.

Hartford has provided evidence concerning its billing practice to turn the late charge indicator off relative to contested invoices. There is no indication that Hartford waived or excused the late charges that Dollar Tree was obligated to pay pursuant to Section F(2) of the 2000-2001 Agreement. Further, the 2000-2001 agreement provides that a "[c]ustomer's failure to satisfy its **Obligations** as defined in this **Agreement** shall constitute a cross default, entitling Hartford to declare all **Obligations** immediately due and payable . . . ." Accordingly, Dollar Tree's dispute as to the basket aggregate

4

provision and effort to mediate the matter did not stay the late charge or absolve it of such obligation to Hartford.

Dollar Tree's argument that the late charges constitute an unenforceable penalty is also unavailing. The parties agree that late charges are allowable in contracts as liquidated damages if the purpose of the late charge is to compensate a party for another party's delay in making payments. McKeever v. Fiore, 78 Conn.App. 783, 792 (2003). A contractual provision for liquidated damages should be upheld if it satisfies three conditions: 1) the damages are uncertain or difficult to prove; 2) the parties intended to liquidate damages in advance; and 3) the amount is not greatly disproportionate to the amount of damage which the parties expected would be sustained by a breach of contract. New York Life Ins. Co. v. Hartford Nat'l Bank & Trust Co., 2 Conn.App. 279, 280-81 (1984).

Dollar Tree complains that the late charge of 1.5% per month is not reasonably related and it is disproportionate to Hartford's actual damages. However, the late charge is directly related to Hartford's inability to use the funds that Dollar Tree owed to it. Further, Connecticut courts have affirmed that a 1.5% per month interest charge on late accounts is reasonable. See Ernst Steel Corp.v. Reliance Ins. Co., 13 Conn.App. 253, 255-56 n.2 (1988).

Additionally, Dollar Tree asserts that the late charges should not accrue after the time that Hartford commenced its action or after it made a formal demand to recover on the contract. In support of this contention, Dollar Tree cites cases involving lender enforcement of promissory notes or loans. See e.g., McKeever, 78 Conn. App at 794; SKW Real Estate Ltd. P'ship v. Gallicchio, 246 Conn.App. 563 (1998). However, these

cases hold that a lender may not recover late charges on a note "once the note has been accelerated and demand for payment has been made. . . ." Shadhali, Inc. v. Hintlian, 41 Conn. App. 225, 230 (1996). Accordingly, this precedent is inapplicable to the facts of the instant case.

**Prejudgment Interest**

Hartford asserts its entitlement to prejudgment interest in the amount of $189,334.30 pursuant to Connecticut General Statutes section 37-3a. The Second Circuit has recently articulated the "correct standard" to determine an award of prejudgment interest:

> Under Connecticut law, the ultimate question is simply "whether the detention of the money is or is not wrongful under the circumstances." Cecio Bros., Inc. v. Feldmann, 161 Conn. 265, 275, 287 A.2d 374 (1971). The "wrongfulness" of the detention is a determination "to be made in view of the demands of justice rather than through the application of an arbitrary rule." Maloney v. PCRE, LLC, 68 Conn.App. 727, 755, 793 A.2d 1118 (Conn.App.Ct.2002) . . . . Courts have identified several factors that can be useful in guiding their inquiry into wrongfulness, such as whether the sum to be paid has been reduced to a liquidated amount, see Slattery v. Maykut, 176 Conn. 147, 155, 405 A.2d 76 (1978), and whether defendant acted in bad faith, see Ferrato v. Webster Bank, 67 Conn.App. 588, 596, 789 A.2d 472 (Conn.App.2002), but these factors are simply tools for assessing wrongfulness and not additional elements to be balanced against wrongfulness itself.

Brookridge Funding Corp. v. Northwestern Human Resources, Inc., 2006 WL 508356 *1 n.2 (2d Cir. 2006).

In this instance, this Court finds no evidence that Dollar Tree wrongfully withheld funds owed to plaintiff. The record in this case evinces that the parties had a bona fide dispute as to the interpretation of the basket aggregate provision. Accordingly, this Court cannot find that the detention of funds was wrongful and that prejudgment interest is merited.

**Attorneys' Fees**

Hartford requests $86,996.00 for attorneys' fees through March 17, 2006, the date of its last filing. Dollar Tree contests Hartford's entitlement to attorneys' fees related to its mediation of this dispute pursuant to the Agreement. Dollar Tree's argument relies upon the contract clause stating that the parties shall "bear the costs of the mediation equally. . . ."

A contract must be viewed in its entirety, and every provision must be given effect if it is possible to do so. United Illuminating Co. v. Wisvest-Connecticut, LLC, 259 Conn. 665, 670-71 (2002). In interpreting contract terms, the Court must afford the language used "its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." Wolosoff v. Wolosoff, 91 Conn.App. 374, 381 (Conn.App. 2005). Where the language of the contract is clear and unambiguous, the contract should be given effect according to its terms. Breiter v. Breiter, 80 Conn.App. 332, 336 (2003). A contract is unambiguous when its language is clear and conveys a definite and precise intent. Canterbury Heights Condominium, Inc. v. Local Land Dev. LLC, 272 Conn. 724, 735 (2005). "A contract term not expressly included will not be read into a contract unless it arises by necessary implication from the provisions of the instrument. . . ." Heyman v. CVS, Inc., 178 Conn. 215, 227 (1979).

Throughout the 2000-2001 Agreement, the contract terms provide for recovery of attorneys' fees and for costs. Since the contract distinguishes between instances for recovery for attorneys' fees and recovery for other costs, the Court cannot now read the word "costs" to signify that both attorneys' fees and costs should be shared equally by

the parties. Accordingly, Hartford may recover attorneys' fees in connection to the mediation effort.

### Other Costs

Hartford requests $5,523.49 in costs and expenses through March 17, 2006, the date of its last filing. Dollar Tree argues that Hartford should not recover costs related to legal research, duplication of documents, postage and telephone calls. However, Dollar Tree relies upon precedent interpreting allowable costs pursuant to federal statutes, rather than the explicit terms of the contract. In this instance, there is no indication that the contract contemplated excluding certain costs related to the enforcement of the contract. Accordingly, the Court will allow the requested amount in costs.

## **CONCLUSION**

For the foregoing reasons, Hartford's motion for Damages, Attorneys' Fees, Costs and Prejudgment Interest [# 55] is GRANTED in part and DENIED in part. Hartford is entitled to reimbursement in the amount of $1,826,193.78, late charges of 1.5% of the outstanding bill for each 30-day period from May 2004 to the present, $86,996.00 for attorneys' fees, and $5,523.49 in costs. The Court orders Dollar Tree to

reimburse Hartford on a monthly basis for all future losses until the aggregate is exhausted.

The motion is denied only as to the request for prejudgment interest.

The clerk is instructed to enter judgment and to close this case.

So Ordered.

_____/s/_____

Warren W. Eginton, Senior U.S. District Judge

Dated this 25th day of May, 2006 at Bridgeport, Connecticut.